**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

GIDGET E. MOORE,

                    **Plaintiff,**

        vs.                                         Civil Action 2:14-CV-455
                                                    Judge Marbley
                                                    Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

                    **Defendant.**

**REPORT AND RECOMMENDATION**

**I.   Background**

     This is an action instituted under the provisions of 42 U.S.C.
§§ 405(g), 1383(c), for review of a final decision of the Commissioner of
Social Security denying plaintiff's applications for disability insurance
benefits and supplemental security income. This matter is now before the
Court on plaintiff's *Statement of Specific Errors*, Doc. No. 11, and the
Commissioner's *Memorandum in Opposition*, Doc. No. 16.

     Plaintiff Gidget E. Moore protectively filed her applications for
benefits on December 2, 2010, alleging that she has been disabled since
June 16, 2010.   The applications were denied initially and upon
reconsideration, and plaintiff requested a *de novo* hearing before an
administrative law judge.

     An administrative hearing was held on November 27, 2012. Plaintiff,
who was represented by counsel, appeared and testified, as did William
Braunig, who testified as a vocational expert.   In a decision dated January
24, 2013, the administrative law judge concluded that plaintiff was not
disabled from June 16, 2010, through the date of the administrative
decision. *PageID* 55-74.   That decision became the final decision of the

Commissioner of Social Security when the Appeals Council declined review on March 28, 2014. *PageID* 40-44.

Plaintiff was 42 years of age on her alleged disability onset date. *See PageID* 72, 292. She has a GED, is able to communicate in English, and has past relevant work as a fast food worker and janitor. *PageID* 72-73, 285. Plaintiff was last insured for disability insurance benefits on June 30, 2013. *PageID* 60. She has not engaged in substantial gainful activity since June 16, 2010, her alleged date of onset of disability. *Id.*

## II.  Evidence of Record[1]

Plaintiff sought mental health treatment from Consolidated Care in December 2009 after her release from prison. *PageID* 1031-42. On initial mental status examination, Robert Crook, M.A., L.S.W., found a full affect but that plaintiff was agitated, depressed and anxious. *PageID* 1042. Mr. Crook diagnosed major depressive disorder, rule out bi-polar disorder, and post-traumatic stress disorder ("PTSD"). *PageID* 1040.

Plaintiff was evaluated by Angela Wallenbrock, M.D., a psychiatrist with Consolidated Care, on December 18, 2009. *PageID* 1025-28. Plaintiff reported that she becomes anxious around groups of people, especially if they're "rowdy." She also referred to anger issues. Dr. Wallenbrock diagnosed dysthymia and PTSD. *PageID* 1027.

Plaintiff underwent counseling with Mr. Crook at Consolidated Care twice per month through at least November 2012. *PageID* 990-1030, 1061-88, 1118-49, 1276-1324. Mr. Crook's treatment notes indicate that plaintiff

---

[1]Although the record contains a history of treatment for physical and mental conditons, plaintiff's arguments on appeal relate only to her psychological condition. *See* Doc. No. 11, at *PageID* 1396-1404. Accordingly, the Court has limited its discussion of the record to the evidence related to plaintiff's claimed mental impairments.

experiences depression, stress, and anxiety, and has difficulty tolerating others. Plaintiff reported being frustrated, angry, depressed, and anxious, especially when she was off her medication or shortly after a traumatic life event. *PageID* 1008, 1012, 1066, 1069, 1072, 1122, 1127, 1280, 1290, 1295, 1300. Mr. Crook found that, although plaintiff exhibited depression or anger, she had logical and clear thought processes, was calm, and had normal behavior and functioning. *PageID* 994, 996, 997, 1000, 1003, 1006, 1011, 1014, 1016, 1068, 1076, 1120-21, 1132, 1136, 1137, 1140, 1276-79, 1281, 1284, 1285, 1289, 1292, 1298, 1304. On May 11, 2010, Mr. Crook reported that plaintiff's "poor stress tolerance, mood swings, anger outbursts" might prevent work activities for a usual work day or work week. *PageID* 961.

In March 2010, plaintiff underwent a vocational assessment through the Ohio Bureau of Vocational Rehabilitation (BVR). *PageID* 1043-59. Plaintiff was placed in a restaurant job, from which she was fired after one month for excessive absenteeism, was rehired, and was then fired once again. *PageID* 1053-57.

On May 14, 2010, Dr. Wallenbrock completed a mental status questionnaire. *PageID* 958-60. Dr. Wallenbrock diagnosed dysthymia and PTSD and reported that plaintiff manifested articulate speech, no loose associations, appropriate mood and affect, average intelligence, and good memory. Dr. Wallenbrock noted plaintiff's complaints of anxiety attacks, but also noted that plaintiff had been recently assaulted by a woman under the influence of drugs. According to Dr. Wallenbrock, plaintiff "may become moody" from work pressure, but that she had a good ability to remember, understand, and follow directions; maintain attention; and

sustain concentration, persist at tasks, and complete tasks in a timely fashion. *PageID* 959.

Vicki Warren, Ph.D., reviewed the record for the state agency in July 2010. *PageID* 971-88. According to Dr. Warren, plaintiff was mildly restricted in her activities of daily living, had moderate difficulty in maintaining social functioning and in maintaining concentration, persistence and pace. *PageID* 985. Dr. Warren opined that plaintiff "retains the ability to do complex routine work in a predictable environment where expectations are clear and consistent. Contact [with] others is not restricted. No production or quota requirements." *PageID* 973.

On March 2, 2011, Dr. Wallenbrock reaffirmed plaintiff's diagnoses of dysthymia and PTSD and found that plaintiff's speech was clear and fluent, that she was fully oriented and had no thinking disorders, that she was of average intelligence, and that her memory was intact. Plaintiff was tearful at times and her mind raced, but she had adequate insight. Dr. Wallenbrock noted that loud noises trigger anxiety and plaintiff becomes anxious in crowds; she "snaps for no reason." According to Dr. Wallenbrock, plaintiff may become anxious in a work setting but that her ability to remember, understand, and follow directions, maintain attention, and sustain concentration, persist at tasks, and complete tasks in a timely fashion were good. *PageID* 1111-13.

State agency psychologist Caroline Lewin, Ph.D., reviewed the file in April 2011 and found that the record documented an affective disorder and anxiety disorder. *PageID* 117. According to Dr. Lewin, plaintiff had moderate restrictions in her activities of daily living and mild difficulties in maintaining social functioning and in concentration, persistence and pace. *Id*. According to Dr. Lewin, plaintiff could  perform

simple to moderately complex tasks where strict production quotas are not required. *PageID* 119-20.

Plaintiff began treatment with another psychiatrist at Consolidated Care, Naomi Bloom, M.D., on March 25, 2011. *PageID* 1115, 1148-49. On September 23, 2011, Dr. Bloom reported that plaintiff experienced a depressed mood intermittently with crying spells, and consequently avoided people. Plaintiff was easily overstimulated, but could focus well on one thing at a time.  Plaintiff's stress tolerance was somewhat lower than average. *PageID* 1115-17.

In November 2011, George Schulz, Ph.D., consultatively examined plaintiff. *PageID* 1151-59.  Plaintiff reported diagnoses of PTSD and depression and advised that her case manager had recommended that she apply for Social Security disability benefits. *PageID* 1152.  She stated that, on a typical day, she reads and watches television; her hobbies include drawing and crocheting. She cooks, cleans her apartment, and does laundry on a regular basis, goes grocery shopping, attends appointments, uses a computer, and gets along well with neighbors, store clerks, and public officials. *PageID* 1154-55.  On mental status examination, plaintiff was cooperative, her speech was clear and well organized, her affect was appropriate, and her mood was euthymic. *PageID* 1155. Plaintiff reported feeling depressed, but denied anxiety.  *PageID* 1156. She could recall six digits forward and four digits in reverse, carry out three-step tasks, and recall three of three objects after five minutes. *Id.*  Dr. Schulz diagnosed depressive and anxiety disorders.  *PageID* 1157.  According to Dr. Schulz, plaintiff could understand and apply instructions in the work setting within the low average range of intellectual functioning, could complete routine or repetitive tasks, could respond appropriately to coworkers and

5

supervisors in a work setting, and would have some difficulty responding appropriately to work pressure. *PageID* 1158-59.

State agency psychologist David Dietz, Ph.D., reviewed the file in November 2011 and opined that plaintiff had mild restrictions in her activities of daily living and in maintaining social functioning; she had moderate difficulties in maintaining concentration, persistence and pace. *PageID* 143. Plaintiff's limitation in the area of concentration and persistence would limit plaintiff to "performing 3 to 4 step tasks where strict production standards are flexible." *PageID* 146.

In February 2012, plaintiff was evaluated by Jim Minutilli, M.S.Ed., a rehabilitation counselor at BVR. *PageID* 1175-91. Testing placed plaintiff in the below average range of vocational aptitude for language usage and perceptual speed and accuracy, as well as below the high school level in mathematics. *PageID* 1178. Mr. Minutilli found barriers to employment based not only on testing results but also on plaintiff's reported mental health and pain concerns, and social limitations and history. *PageID* 1178. In light of plaintiff's reported history of difficulty in handling stress, Mr. Minutilli recommended that any attempt at competitive employment begin with part-time work and progress to full-time work only as tolerated and in consultation with her mental health team and/or BVR counselor. He also recommended that plaintiff continue with mental health treatment and medications as prescribed. *PageID* 1181.

In June 2012, Mr. Crook, plaintiff's counselor at Consolidated Care, opined that plaintiff had marked to extreme limitations in her ability to perform work-related social interactions, concentration, persistence, and adaptation activities. Plaintiff was moderately impaired in her ability to maintain her personal appearance and hygiene. He further opined that

plaintiff's anxiety level, depression, and anger outbursts would be exacerbated by the stress of a job.  *PageID* 1206-08.

## III. Administrative Hearing and Decision

At the time of administrative hearing, plaintiff was undergoing continued training through the BVR.  *PageID* 86-87. She was having "trouble remembering the different things that I have to do."  *PageID* 87.  She lived alone in an apartment obtained through a residential housing program.  *PageID* 86, 90.

Plaintiff testified that she stopped working because of her "mental stability."  *PageID* 88.  Her mental issues have gotten worse and, on some days, she cannot get out of bed or leave her house. *Id.; PageID* 96. She fears that people are following her and "I just don't like to be out. I get frustrated or agitated or anxious." *Id.* She no longer enjoys activities that she used to enjoy. *PageID* 96.

Plaintiff relies on a friend's help in completing household chores and running errands. *PageID* 90-91.  She goes grocery shopping once a month, but is accompanied by her friend. *Id.*

In his written decision, the administrative law judge found that plaintiff's severe mental impairments consist of affective and anxiety disorders.  *PageID* 61. Her impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") for work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; pushing or pulling similar amounts; standing, walking, and sitting for 6 hours each; no climbing of any kind; no more than occasional ability to perform all other postural activity; no more than frequent reaching and

no reaching above shoulder level; work requiring no more than a moderate level of noise exposure, as defined in the DOT's Selected Characteristics of Occupations; no exposure to environmental extremes, such as dust, gas, fumes, heat, cold, humidity; no more than occasional interaction with the public; no more than simple, repetitive tasks performed with the need for only regularly scheduled breaks and with the ability for either production-oriented or goal-oriented work. *PageID* 62-66.

In determining plaintiff's RFC, the administrative law judge noted that he considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSR 96-2p, SSR 96-5p, SSR 96-6p and SSR 06-3p. *PageID* 66-67. Specifically, the administrative law judge afforded "minimal" weight to Mr. Crook's June 2012 opinion because it was inconsistent with the weight of the clinical evidence of record and with plaintiff's own allegations, and did not provide an explanation for the assessment (which the administrative law judge found was more consistent with a person requiring inpatient hospitalization for stabilization of symptoms). *PageID* 72. The administrative law judge gave "limited weight" to Mr. Minutilli's vocational evaluation because his opinions as to plaintiff's mental capacity relied primarily on plaintiff's own reports of her mental status. *Id.*

The administrative law judge gave significant weight to the opinions of plaintiff's treating psychiatrists, Drs. Wallenbrock and Bloom, finding them to be consistent with the substantial evidence in the record. *PageID* 71. The administrative law judge also assigned "significant adjudicative weight" to the opinions of "the State Agency psychological consultants." *Id.*

8

Although this RFC precluded plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is able to perform a significant number of jobs in the regional economy, including such jobs as mail clerk, photocopy machine operator, and routing clerk. *PageID* 72-73. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from June 16, 2010, through the date of the administrative law judge's decision. *PageID* 74.

**IV.  Discussion**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing

*Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In her *Statement of Specific Errors*, plaintiff challenges the administrative law judge's evaluation of the opinions of plaintiff's social worker, Robert Crook, and the vocational evaluator, Jim Minutilli, Doc. No. 11 at *PageID* 1397-1400, and complains that the administrative law judge failed to account for plaintiff's "significant" limitations in maintaining concentration, persistence, or pace as well as her inability to perform a job with production quotas, *id.,* at *PageID* 1400-02, failed to mention several exhibits in the record, including the opinion of Dr. Warren, *id.,* at *PageID* 1402-04, and posed an improper hypothetical to the vocational expert, *id.,* at *PageID* 1404-05.

As noted *supra*, the administrative law judge gave "minimal" and "limited" weight to the opinions of plaintiff's treating social worker and vocational counselor. Messrs. Crook and Minutilli are non-medical sources, *i.e.,* they are not included in the list of acceptable medical sources found in the Commissioner's regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a). Their opinions are therefore not entitled to the controlling weight or deference to which the opinions of treating physicians are ordinarily entitled. *See* 20 C.F.R. §§404.1527(d); 416.927(d). However, evidence from such other sources may be considered "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work. . . ." 20 C.F.R. §§404.1513(d)(1); 416.913(d)(1). Among the factors to be considered in evaluating the opinions of "other sources" are the length of time and frequency of

10

treatment, consistency with other evidence, the degree to which the source presents relevant evidence to support the opinion, how well the opinion is explained, whether the source has a special expertise and any other factor supporting or refuting the opinion. SSR 06-03p, 2006 WL 2329939, *4 - 6 (August 9, 2006). Ultimately, however, the administrative law judge has "discretion to determine the proper weight to accord opinions from 'other sources.'" *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997)).

This Court concludes that the administrative law judge appropriately evaluated the opinions of plaintiff's treating social worker and vocational evaluator.  In considering Mr. Crook's opinion, the administrative law judge noted that the social worker had treated plaintiff "for a significant period," *PageID* 72, including counseling sessions "approximately every two weeks." *PageID* 63. Moreover, the administrative law judge's finding that Mr. Crooks' opinion was inconsistent with the opinions of plaintiff's treating psychiatrists is supported by substantial evidence.  Dr. Wallenbrock opined in 2010 that plaintiff had a good ability to remember, understand, and follow directions; maintain attention; and sustain concentration, persist at tasks, and complete tasks in a timely fashion, *PageID* 959, and opined in 2011 that plaintiff's ability to remember, understand, and follow directions, maintain attention, and sustain concentration, persist at tasks, and complete tasks in a timely fashion were good. *PageID* 1111-13. Dr. Bloom opined in 2011 that plaintiff could focus well on one thing at a time although her stress tolerance was somewhat lower than average.  *PageID* 1115-17. Dr. Schulz, the examining consultative psychologist, opined in November 2011 that plaintiff could

11

understand and apply instructions in the work setting within the low average range of intellectual functioning, could complete routine or repetitive tasks, and could respond appropriately to coworkers and supervisors in a work setting, although she would have some difficulty responding appropriately to work pressure. *PageID* 1158-59. Finally, it is clear that the administrative law judge considered Mr. Crook's treatment notes. *See, e.g., PageID* 63, 65. The fact that the administrative law judge may not have expressly discussed every treatment note in his written decision is of no significance. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006).

The administrative law judge assigned "limited weight" to the opinion of Mr. Minutilli, finding that his statements were based on plaintiff's subjective statements, which the administrative law judge found to be "less than fully credible. . . ." *PageID* 72. Mr. Minutilli's report clearly relied in large measure on plaintiff's own reported barriers to employment. *See PageID* 1178. Significantly, plaintiff does not challenge the administrative law judge's credibility determination.

In short, the Court concludes that the administrative law judge did not err in this regard.

Plaintiff also complains that the administrative law judge's RFC determination failed to account for all the limitations found to be credible. The administrative law judge found that, from a mental standpoint, plaintiff has the RFC to perform jobs that require no more than "occasional interaction with the public; no more than simple, repetitive tasks performed with the need for only regularly scheduled breaks and with the ability for either production-oriented or goal-oriented work." *PageID* 71. Plaintiff complains that this RFC determination fails to include

12

limitations on maintaining concentration, persistence or pace and on production or quota requirements, even though those limitations were included in the opinions of the reviewing state agency psychologists, to whose opinions the administrative law judge accorded "significant adjudicative weight." *See PageID* 71. This Court agrees.

According to the state agency reviewing psychologists, Drs. Dietz, and Warren, plaintiff has moderate limitations in the areas of concentration, persistence and pace. *PageID* 146, 973. All three state agency reviewing psychologists, Drs. Lewin, Dietz and Warren, limited plaintiff to work that does not require strict production quotas. *PageID* 120, 146, 973. The Commissioner recognizes the inconsistency between the RFC as found by the administrative law judge and the opinions of the state agency reviewing psychologists, but contends that the administrative law judge "reasonably relied on the opinions of Plaintiff's treating sources over the state reviewing psychologists in creating Plaintiff's RFC." *Memorandum in Opposition*, *PageID* 1422. However, this contention overlooks the fact that the administrative law judge accorded "significant adjudicative weight" to these opinions. *See PageID* 71.

In light of this unexplained inconsistency in the administrative law judge's evaluation of plaintiff's RFC, the Court cannot conclude that the decision of the administrative law judge is supported by substantial evidence.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that the matter

be remanded to the Commissioner for further consideration of plaintiff's residual functional capacity.[1]

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: June 5, 2015                                    *s/Norah McCann King*
                                                      Norah McCann King
                                              United States Magistrate Judge

---

[1] In light of the Court's resolution of this issue, the Court need not, and does not, consider plaintiff's remaining contentions.

14