**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **GIDGET E. MOORE,** | : | Civil Action No. 2:14-cv-455 |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | Magistrate Judge King |
| **Carolyn W. Colvin,** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on the Commissioner's Objection, (Doc. 19), to the Magistrate Judge's **Report and Recommendation** (Doc. 18), recommending that the Court reverse the decision of the Commissioner and remand the matter for further proceedings. Upon independent review by the Court, and for reasons set forth below, Defendant's objection is hereby **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's **Report and Recommendation.**

### I. BACKGROUND

Gidget E. Moore ("Plaintiff") filed her application for benefits on December 2, 2010, alleging that she had been disabled since June 16, 2010. The application was denied initially and upon reconsideration, and Plaintiff requested a de novo hearing before the Administrative Law Judge ("ALJ"). An administrative hearing was held on November 27, 2012 and Plaintiff, who was represented by counsel, appeared and testified. On January 24, 2013, the ALJ concluded that Plaintiff was not disabled from June 16, 2010, through the date of the administrative decision.

1

That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 28, 2014.

### A. Factual Background

### 1. Evidence of Record Regarding Plaintiff's Mental Impairments[1]

The Magistrate Judge thoroughly set forth the evidence of record concerning Plaintiff's mental impairments. *Moore v. Comm'r of Soc. Sec.,* No. 2:14-CV-455, 2015 WL 3562446, at *2 (S.D. Ohio June 5, 2015). This Court adopts the Magistrate Judge's factual findings with some adjustments.

Plaintiff sought mental health treatment from Consolidated Care in December 2009 following her release from prison. On the first examination, Robert Crook, M.A., L.S.W., diagnosed Plaintiff with major depressive disorder, rule out bi-polar disorder, and post-traumatic stress disorder ("PTSD").

On December 18, 2009, Dr. Angela Wallenbrock, M.D., a psychiatrist with Consolidated Care, evaluated Plaintiff and diagnosed her with dysthymia and PTSD after reporting that Plaintiff had anger issues and became anxious around large groups of people.

Plaintiff underwent counseling with Mr. Crook at Consolidated Care twice per month through at least November 2012. Mr. Crook's treatment notes indicated that Plaintiff experienced depression, stress, anxiety, and difficulty tolerating others. He found that although Plaintiff exhibited depression or anger, she had logical and clear thought processes, was calm, and had normal behavior and functioning. He also noted, however, the Plaintiff's "poor stress tolerance,

---

[1] Although the record contains a history of treatment for both physical and mental conditions, Plaintiff's issues on appeal and within the Commissioner's objection pertain only to Plaintiff's mental impairments.

mood swings, anger outbursts" might prevent her from completing work activities within a normal workweek.

In March 2010, Plaintiff underwent a vocational assessment through the Ohio Bureau of Vocational Rehabilitation ("BVR"). She was placed in a restaurant job from which she was fired after one month for excessive absenteeism, was rehired, and was then fired once again.

In July of 2010, Dr. Vikki Warren performed a consultative psychological examination, and developed a Mental Residual Functional Capacity ("MRFC") of the Plaintiff for the Agency. In that evaluation, Dr. Warren determined that Plaintiff had mild limitations in activities of daily living, and moderate difficulties in maintaining daily functioning and maintaining concentration, persistence, or pace. More specifically, she found Plaintiff was moderately limited in her ability to work in coordination with others without being distracted, and in her ability to complete a normal workday and workweek without interruptions, and to perform at a consistence pace without an unreasonable number and length of rest periods. In sum, she recommended the following MRFC: "Clmt retains the ability to do complex routine work in a predictable environment where expectations are clear and consistent. Contact w/others is not restricted. No production or quota requirements."

On May 14, 2010, Dr. A. Wallenbrock, a treating psychiatrist from Consolidated Care completed a mental status questionnaire for the Ohio Bureau of Disability in which she stated that Plaintiff "may become moody" from work pressure, but that she had a "good ability" to do the following: remember, understand, and follow directions, maintain attention, sustain concentration, persist at tasks, and complete tasks in a timely manner. On March 2, 2011, Dr. Wallenbrock completed a second questionnaire, in which she reaffirmed Plaintiff's diagnoses of dysthymia and PTSD and noted that Plaintiff may become anxious in a work setting. She once

3

again indicated, however, that she had a "good" ability to remember, understand, and follow directions, maintain attention, sustain concentration, persist at tasks, and complete task in a timely fashion.

On March 25, 2011, Plaintiff began treatment with Naomi Bloom, M.D., another psychiatrist at Consolidated Care. On September 23, 2011, Dr. Bloom completed a form for the Agency stating that Plaintiff suffered from chronic depression and remained symptomatic, experienced a depressed mood intermittently with crying spells, and consequently avoided people. She found that Plaintiff was easily overstimulated, but could focus well on one thing at a time. Lastly, she indicated that Plaintiff's stress tolerance was somewhat lower than average.

State agency psychologist Caroline Lewin, Ph.D., reviewed Plaintiff's medical records in April 2011, finding that the record documented an affective disorder and anxiety disorder. According to Dr. Lewin, Plaintiff had moderate restrictions in her activities of daily living and mild difficulties in maintaining social functioning and in concentration, persistence and pace. She concluded that Plaintiff could perform "simple to moderately complex tasks where strict production quotas are not required."

In November 2011, George Schulz, Ph.D., a clinical psychologist, consultatively examined Plaintiff for the Agency. Based on his examination, Dr. Schulz diagnosed depressive and anxiety disorders. He determined Plaintiff could understand and apply instructions in the work setting within the low average range of intellectual functioning. He also found she could complete routine or repetitive tasks in a job setting, observing that although she may experience a subjective sense of reduced effectiveness in that area, objective changes at the level of prompting concerns by employers were not to be expected. Finally, he found she could respond

4

appropriately to coworkers and supervisors in a work setting, but that she would have some difficulty responding appropriately to work pressure.

Also in November 2011, State Agency psychologist, David Dietz, Ph.D., reviewed Plaintiff's file and opined that Plaintiff had mild restrictions in her activities of daily living and moderate difficulties in maintaining concentration, persistence, and pace.  Dr. Dietz concluded that Plaintiff's limitations would limit her to "performing 3 to 4 step tasks where strict production standards are flexible." Further, regarding the Plaintiff's adaptation limitations, Dr. Dietz indicated that Plaintiff's "depression and anxiety contributes to reduced stress tolerance, in evidence of her need to call a therapist or a friend in times of increased stress...therefore she would work better in an environment that is relatively static."

In February 2012, Plaintiff was evaluated by Jim Minutilli, M.S.Ed., a rehabilitation counselor at BVR who found barriers to employment based not only on testing results but also on Plaintiff's reported mental health issues, pain concerns, and social limitations.  Dr. Minutilli recommended that any attempt at competitive employment begin with part-time work and progress to full-time work only as tolerated and in consultation with her mental health team and/or BVR counselor. He also recommended that Plaintiff continue with mental health treatment and medication as prescribed.

In June 2012, Mr. Crook, Plaintiff's counselor at Consolidated Care, opined that Plaintiff had extreme limitations in her ability to perform work-related social interactions, concentration, persistence, and adaptation activities. Plaintiff was moderately impaired in her ability to maintain her personal appearance and hygiene. He further opined that Plaintiff's anxiety level, depression, and anger outbursts would be exacerbated by the stress of a job.

5

**2. Plaintiff's Testimony**

At the time of the administrative hearing, Plaintiff was undergoing continued training through BVR. She lived alone, had trouble remembering the different things she had to do, and relied on a friend's help in completing household chores and running errands. She testified that she stopped working because of her "mental stability." She claimed that her mental issues had gotten worse and, on some days, she could not get out of bed or leave her house.

**3. Administrative Decision**

In his opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disabilities benefits claim. *See* 20 C.F.R. § 404.1520.[2] First, the ALJ determined

---

[2] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled....
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled....
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled....

that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2013. At step one of the five step sequential analysis, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date, June 16, 2010. At step two, the ALJ found that Plaintiff had the severe mental impairments of affective and anxiety disorders. At step three, however, he determined that none of her severe impairments met or equaled a listed impairment. In coming to this conclusion, he noted that Plaintiff presented with moderate, though not severe, difficulties in social functioning. With regard to concentration, persistence and pace, he found that "she is moderately impaired in this area." In coming to these conclusions, he relied on the reports of Drs. Wallenbrock and Bloom from Consolidated Care, as well as on the report from one-time consultative examiner Dr. Schulz. The ALJ also referenced the opinions of Robert Cook, who opined that Plaintiff had a number of severe impairments. As explained later in the opinion, the ALJ granted Mr. Cook's opinions little if any weight.

Prior to step four[3], the ALJ concluded that Plaintiff had the following mental residual functioning capacity ("MRFC"):

> no more than occasional interaction with the public; and no more than simple, repetitive tasks performed with the need for only regularly scheduled breaks with the ability for either production-oriented or goal-oriented work.

(R. 27).

In terms of record evidence related to Plaintiff's mental capacity to work, the ALJ found that the record did not support restrictions beyond those he indicated. In support, he relied on Dr.

---

20 C.F.R. § 404.1520(a)(4).

[3] "Before we go from step three to step four, we assess your residual functional capacity.... We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20 C.F.R. § 404.1520(a)(4); *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 28, n. 3 (6th Cir. 2009).

Shultz's evaluation, and treatment records from Consolidated Care demonstrating that her "condition remains stable with treatment and clinical observations generally note, at most," some depressed mood and anxiousness." He also relied on the responses to mental impairment questionnaires filled out by her "psychiatrists," assumedly Drs. Wallenbrock and Bloom, which he found supported the MRFC. He also relied on the vocational evaluation completed by Minutilli.

When weighing the opinion evidence to formulate Plaintiffs MRFC, the ALJ stated "the statements of the psychiatrists are generally entitled to significant weight and they support the residual functional capacity set forth above. (See, Exhibits 5-F, 13-F, and 14-F)." Those three exhibits refer to the two questionnaires completed by Dr. Wallenbrock, and the one questionnaire completed by Dr. Bloom. The ALJ found, in addition, that "the weight of the evidence generally supports the opinions of the State Agency psychological consultants and, as a result, they are entitled to significant adjudicative weight."

The ALJ gave "some limited" weight to Mr. Minutilli's vocational evaluation because while it was based on significant aptitude testing, the opinion as to Plaintiff's mental capacity relied primarily on Plaintiff's subjective reports of her mental status.

Finally he gave Mr. Crook's opinions minimal if any adjudicative weight, noting they were not entitled to any deference because he was not an acceptable medical source, they were entirely inconsistent with the other evidence, and were not well explained.

Even though the MRFC precluded Plaintiff from her past work, the ALJ relied on the testimony of the vocational expert to find that Plaintiff is able to perform a significant number of jobs in the regional economy including mail clerk, photocopy machine operator, and routing

clerk. Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

### 4.  Magistrate Judge's Decision

In her Statement of Specific Errors, Plaintiff argued that: (1) the ALJ failed to provide a proper evaluation of Plaintiff's social worker, Mr. Crook, and the vocational examiner, Mr. Minutilli, because he dismissed their opinions with boilerplate statements without referencing any of the findings; (2) and the ALJ failed to account for multiple opined limitations by State agency psychological consultants to whose opinions he granted significant weight; (3) the ALJ erred by failing to consider multiple medical exhibits, including that of state agency psychologist Dr. Warren; and (4) the hypothetical question posed to the VE was erroneous because it failed to include limitations deemed credible. (Doc. 11).

The Magistrate Judge found that the ALJ did not err in the evaluation of Plaintiff's treating social worker and vocational evaluator because the ALJ's finding that Mr. Crooks' opinion was inconsistent with the opinions of Plaintiff's treating psychiatrist was supported by substantial evidence. (*Id.*).  The Magistrate Judge also stated that it was clear that the ALJ considered Mr. Crook's treatment notes even though he did not expressly discuss it.  (*Id.*).

The Magistrate Judge did find, however, that the ALJ erred in granting "significant adjudicative weight" to the opinions of "state agency psychological consultants," but then failing to include limitations in Plaintiff's MRFC which were included in the opinions of multiple reviewing and examining state agency psychologist' opinions. Specifically, the Magistrate Judge found that Drs. Dietz, Warren and Lewin all found that Plaintiff is limited to work that does not require strict production quotas, but the Plaintiff's MRFC failed to include any quota limitations. Further, the Magistrate Judge noted that Drs. Dietz and Warren both included moderate

9

limitations in concentration, persistence, and pace, yet the MRFC contains no such limitations. Thus, the Magistrate Judge found that in light of the unexplained inconsistency of granting these opinions significant weight, but then ignoring significant portions of their opinions, the Court could not conclude that the ALJ's decision was supported by substantial evidence.

### B. Procedural Background

The Magistrate Judge issued her Report and Recommendation on June 5, 2015. The Commissioner objected to the Magistrate Judge's decision on June 15, 2015. The Plaintiff responded on June 26, 2015. The matter now is ripe for review.

### III. STANDARD OF REVIEW

This Court, upon objection, is required to "make a *de novo* determination" of those portions of the Magistrate Judge's report or specified proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). This Court's review "is limited to determining whether the Commissioner's decisions 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). The findings of the Commissioner are not subject to reversal merely because there exists in the record

10

substantial evidence to support a different conclusion. *Buxton v. Halter, Comm'r of Soc. Sec.*, 246 F.3d 762 (6th Cir. 2001). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the Court would have arrived at a different conclusion. *Elkins v. Sec'y of Health and Human Servs.,* 658 F.2d 437, 439 (6th Cir. 1981).

Additionally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013), *reh'g denied* (May 2, 2013).

### III. ANALYSIS

In the Objection to the Magistrate Judge's Report and Recommendation, the Commissioner argues that contrary to the Magistrate Judge's determination, the ALJ is not required to adopt the exact limitations in any medical opinion; instead, the Commissioner states the ALJ has the final responsibility for determining an individual's RFC. The Commissioner also argues that the ALJ was correct in crediting the opinions of the treating sources over those of the State Agency reviewing psychologists when formulating the Plaintiff's MRFC, though she gave both opinions "significant" weight. Specifically, the treating psychiatrist Dr. Wallenbrock opines that Plaintiff has a good ability to maintain concentration, persistence and pace.

11

Defendant's arguments are not well taken and this Court agrees with the Magistrate Judge's Report and Recommendation to reverse and remand this claim to the Commissioner for further proceedings in accordance with law.

An RFC is an assessment of how well an individual can carry out certain physical and mental tasks in a work setting on a continual basis once their limitations have been taken into account. *White v. Commissioner of Social Security,* 312 Fed. App'x. 779, 788 (6th Cir. 2009); *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002). In determining the RFC of an individual, the ALJ must consider all relevant evidence in the case record, which includes medical records, opinions of treating physicians, and the claimant's own descriptions of his or her limitations. *Collins v. Commissioner of Social Security*, 356 Fed. App'x. 663, 668 (6th Cir. 2009). The ALJ is required to evaluate every medical opinion received and if the ALJ rejects a treating physician's opinion, he must provide a reason for doing so. *Id.* Although this explanatory requirement does not apply to opinions from physicians who have not treated a claimant, *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.2010), "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 518-20 (6th Cir. 2011) (citing *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

In *Stacey*, the Sixth Circuit found that the ALJ's failure to take account of the opinion of an examining but not treating doctor which conflicted with the plaintiff's RFC was an error. Although the ALJ mentioned the doctor's opinion during his discussion of the plaintiff's medical history, he ultimately adopted the opinion of another physician, who reviewed the medical records but did not examine the plaintiff. The Sixth Circuit found this was in error as it could not trace the ALJ's reasoning for why he ignored the examining doctor's opinion. Specifically, the

Court could not discern whether the ALJ discounted the examining doctor's opinions for valid or invalid reasons, or simply ignored them altogether. *Id*. at 519.

The rationale in *Stacey* applies in this case. As the Magistrate Judge explained, the ALJ determined that Plaintiff had the following MRFC:

> no more than occasional interaction with the public; and no more than simple, repetitive tasks performed with the need for only regularly scheduled breaks with the ability for either production-oriented or goal-oriented work.

Additionally, the ALJ gave "significant" weight to all State agency consultative psychologists without distinction. As the Magistrate Judge noted, a number of the State Agency consultative psychologists made clear findings that contradict the ALJ's determination that Plaintiff can perform production-oriented or goal-oriented work. Specifically, Drs. Dietz and Lewin, State agency psychologists who reviewed the entirety of Plaintiff's records, and Dr. Warren, who examined the Plaintiff, all found that Plaintiff is limited to work that does not require strict production standards or quota requirements. The Plaintiff's MRFC, however, includes no such limitations, and actually includes the opposite—i.e. the ability to complete normal production-oriented or goal-oriented work. Further, as the Magistrate Judge noted, Drs. Dietz and Warren both found moderate limitations in concentration, persistence, and pace, yet the MRFC contains no such limitations. The Sixth Circuit has found limiting jobs to simple, repetitive tasks does not adequately convey limitations in concentration, persistence and pace. *See Ealy*, 594 F.3d at 516.

As the Plaintiff points out, the ALJ's decision fails to reference explicitly these three State agency consultants, although this Court assumes that in granting "significant weight" to all State agency consultants, the ALJ granted significant weight to their opinions as well. Thus, this Court is left with an inability to discern whether the ALJ discounted portions of these three State agency consultants' opinions for valid or invalid reasons, or simply ignored them altogether. *See*

13

*Stacey*, 451 F. App'x at 519. Such omissions constitute procedural error according to the Sixth Circuit.

Further, even if this Court assumes that the ALJ intentionally credited only some portions of the Agency consultants' opinions while intentionally ignoring other portions, the ALJ's MRFC determination is not supported by substantial evidence when he grants significant weight to a medical opinion concerning the claimant's limitations, but then fails, without explanation, to incorporate those limitations into the claimant's MRFC. *See*, *e.g.*, *Franklin v. Colvin*, No. 14-1132, 2015 WL 1440931 at *1-3 (D. Kan. March 30, 2015) (holding that the ALJ committed reversible error when he assigned significant weight to the opinion of a non-treating source regarding the plaintiff's limitations, but then, without explanation, failed to incorporate that limitation into the plaintiff's RFC). *See also Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio Mar. 11, 2013) (quoting *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010)) ("It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding."). This Court also notes that the ALJ acknowledged at step three that the Plaintiff is "moderately impaired" in the area of concentration, persistence and pace, which further supports the need to remand this case so that the ALJ can reformulate the Plaintiff's MRFC to be consistent with the ALJ's own findings.

Such an error is not harmless because a failure to properly characterize the record evidence when formulating a claimant's RFC can lead to an "improper calculation" of a claimant's RFC, which informs the hypothetical question, upon which the ALJ relies to determine whether the claimant can do work. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (discussing

14

*Howard* and noting that "a denial of benefits based upon an ALJ's improper calculation of a claimant's residual functional capacity ... must be reversed")). Further, remanding this case is not a mere formality, as it "would propel [our Court] into the domain which Congress has set aside exclusively for the administrative agency, if we were to determine the jobs available to [the claimant] based upon her limitations." *Id*. at 192 (citations and quotation marks omitted).

Thus, the ALJ's failure to explain why he did not adopt the limitations of medical sources to whose opinion he afforded "significant" weight constitutes a reversible error.[4]

### IV. CONCLUSION

For these reasons, Defendant's Objection is hereby **OVERRULED**. The Court **ADOPTS** the Magistrate Judge's **Report and Recommendation.** This action is hereby **REVERSED** and **REMANDED** to the Commissioner for reconsideration in accordance with this Order, pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS SO ORDERED.**

                                      **/s/ Algenon L. Marbley**
                                      **ALGENON L. MARBLEY**
                                      **UNITED STATES DISTRICT JUDGE**

**DATED:  September 28, 2015**

---

[4] In her Response, the Plaintiff also raises the issue of the ALJ's failure to consider medical evidence of record including Dr. Warren's report and some of Mr. Crook's treatment notes, as well as the ALJ's only brief mention of a report by Dr. Wallenbrock. This Court finds that it is unnecessary to address the significance of each of these exhibits individually, as substantial evidence supported discounting Mr. Crook's opinions, this decision already directs the ALJ to revisit the opinion of Dr. Warren, and the ALJ clearly considered the opinions of Dr. Wallenbrock when formulating the MRFC.